UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

Arthur M.[1],

            Plaintiff,

-v-

ANDREW SAUL,
Commissioner of Social Security,[2]

            Defendant.

6:20-CV-06174-MJR
DECISION AND ORDER

---

Pursuant to 28 U.S.C. §636(c), the parties consented to have a United States Magistrate Judge conduct all proceedings in this case. (Dkt. No. 19)

Plaintiff Arthur M. brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying him Supplemental Security Income ("SSI") benefits under the Social Security Act (the "Act"). Both parties have moved for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

For the following reasons, plaintiff's motion (Dkt. No. 15) is denied and the Commissioner's motion (Dkt. No. 16) is granted.

---

[1] In accordance with the November 18, 2020 Standing Order, issued by the Hon. Frank P. Geraci, Jr., Chief Judge of the United States District Court for the Western District of New York, this Decision and Order will identify plaintiff using only his first name and last initial in order to better protect personal and medical information of non-governmental parties.
[2] Andrew Saul is now the Commissioner of Social Security and is automatically substituted as a party pursuant to Fed. R. Civ. P. 25(d).

## BACKGROUND[3]

Plaintiff protectively filed applications for both Disability Insurance Benefits ("DIB") and SSI benefits on January 26, 2017, alleging disability beginning June 15, 2001 due to mental health issues, a neck and lumbar spine injury, and back pain. (See Tr. 11, 166-67, 173-75, 194, 204)[4] Plaintiff's application was initially denied on May 5, 2017. (Tr. 62) Plaintiff timely filed a written request for a hearing on June 16, 2017. (Tr. 107-08) A hearing was held before Administrative Law Judge John Costello ("the ALJ") on July 9, 2019. (Tr. 32-61) Plaintiff, who appeared with counsel, testified at the hearing. (Id.) During the hearing, plaintiff amended the alleged onset date of his disability to January 26, 2017, the day he protectively filed for SSI.[5] (Tr. 11, 204) The ALJ also received testimony from Vocational Expert Sakinah A. Malik ("the VE"). (Id.) On August 30, 2019, the ALJ issued a decision finding that plaintiff was not disabled under the Act. (Tr. 11-29) Plaintiff timely filed a request for review of the ALJ's decision with the Appeals Council. (Tr. 413-14) The Appeals Council denied plaintiff's request for review of the ALJ's determination on January 24, 2020, and this action followed. (Tr. 1-6)

Born on July 21, 1969, plaintiff was 47 years old on the amended disability onset date of January 26, 2017 and 49 years old on the date of the hearing. (Tr. 18, 166) Plaintiff speaks English, attended school through the tenth grade, and last worked in 2001. (Tr. 18, 195) His past work history includes cleaning, painting, changing oil in cars, moving cars at a car lot and sorting produce. (Tr. 195)

---

[3] The Court assumes the parties' familiarity with plaintiff's medical history, which is summarized in the moving papers. The Court has reviewed the medical record, but cites only the portions of it that are relevant to the instant decision.
[4] References to "Tr." are to the administrative record in this case.
[5] Also at that time, plaintiff's counsel acknowledged that plaintiff's eligibility for DIB had expired and, accordingly, plaintiff and his counsel agreed to dismiss that claim. (Tr. 33-35)

## DISCUSSION

I. *Scope of Judicial Review*

The Court's review of the Commissioner's decision is deferential. Under the Act, the Commissioner's factual determinations "shall be conclusive" so long as they are "supported by substantial evidence," 42 U.S.C. §405(g), that is, supported by "such relevant evidence as a reasonable mind might accept as adequate to support [the] conclusion," *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (internal quotation marks and citation omitted). "The substantial evidence test applies not only to findings on basic evidentiary facts, but also to inferences and conclusions drawn from the facts." *Smith v. Colvin*, 17 F. Supp. 3d 260, 264 (W.D.N.Y. 2014). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force," the Court may "not substitute [its] judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir. 2002). Thus, the Court's task is to ask "'whether the record, read as a whole, yields such evidence as would allow a reasonable mind to accept the conclusions reached' by the Commissioner." *Silvers v. Colvin*, 67 F. Supp. 3d 570, 574 (W.D.N.Y. 2014) (*quoting Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982)).

Two related rules follow from the Act's standard of review. The first is that "[i]t is the function of the [Commissioner], not [the Court], to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant." *Carroll v. Sec'y of Health & Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983). The second rule is that "[g]enuine conflicts in the medical evidence are for the Commissioner to resolve." *Veino*, 312 F.3d at 588. While the applicable standard of review is deferential, this does not mean that the Commissioner's decision is presumptively correct. The Commissioner's decision is, as

described above, subject to remand or reversal if the factual conclusions on which it is based are not supported by substantial evidence. Further, the Commissioner's factual conclusions must be applied to the correct legal standard. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008). Failure to apply the correct legal standard is reversible error. *Id.*

II.   *Standards for Determining "Disability" Under the Act*

A "disability" is an "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §423(d)(1)(A). The Commissioner may find the claimant disabled "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work." *Id.* §423(d)(2)(A). The Commissioner must make these determinations based on "objective medical facts, diagnoses or medical opinions based on these facts, subjective evidence of pain or disability, and . . . [the claimant's] educational background, age, and work experience." *Dumas v. Schweiker*, 712 F.2d 1545, 1550 (2d Cir. 1983) (first alteration in original) (*quoting Miles v. Harris*, 645 F.2d 122, 124 (2d Cir. 1981)).

To guide the assessment of whether a claimant is disabled, the Commissioner has promulgated a "five-step sequential evaluation process." 20 C.F.R. §404.1520(a)(4). First, the Commissioner determines whether the claimant is "working" and whether that

work "is substantial gainful activity." *Id.* §404.1520(b). If the claimant is engaged in substantial gainful activity, the claimant is "not disabled regardless of [his or her] medical condition or . . . age, education, and work experience." *Id.* Second, if the claimant is not engaged in substantial gainful activity, the Commissioner asks whether the claimant has a "severe impairment." *Id.* §404.1520(c). To make this determination, the Commissioner asks whether the claimant has "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." *Id.* As with the first step, if the claimant does not have a severe impairment, he or she is not disabled regardless of any other factors or considerations. *Id.* Third, if the claimant does have a severe impairment, the Commissioner asks two additional questions: first, whether that severe impairment meets the Act's duration requirement, and second, whether the severe impairment is either listed in Appendix 1 of the Commissioner's regulations or is "equal to" an impairment listed in Appendix 1. *Id.* §404.1520(d). If the claimant satisfies both requirements of step three, the Commissioner will find that he or she is disabled without regard to his or her age, education, and work experience. *Id.*

If the claimant does not have the severe impairment required by step three, the Commissioner's analysis proceeds to steps four and five. Before doing so, the Commissioner must "assess and make a finding about [the claimant's] residual functional capacity ["RFC"] based on all the relevant medical and other evidence" in the record. *Id.* §404.1520(e). RFC "is the most [the claimant] can still do despite [his or her] limitations." *Id.* §404.1545(a)(1). The Commissioner's assessment of the claimant's RFC is then applied at steps four and five. At step four, the Commissioner "compare[s] [the] residual functional capacity assessment . . . with the physical and mental demands of [the

5

claimant's] past relevant work." *Id.* §404.1520(f). If, based on that comparison, the claimant is able to perform his or her past relevant work, the Commissioner will find that the claimant is not disabled within the meaning of the Act. *Id.* Finally, if the claimant cannot perform his or her past relevant work or does not have any past relevant work, then at the fifth step the Commissioner considers whether, based on the claimant's RFC, age, education, and work experience, the claimant "can make an adjustment to other work." *Id.* §404.1520(g)(1). If the claimant can adjust to other work, he or she is not disabled. *Id.* If, however, the claimant cannot adjust to other work, he or she is disabled within the meaning of the Act. *Id.*

The burden through steps one through four described above rests on the claimant. If the claimant carries their burden through the first four steps, "the burden then shifts to the [Commissioner] to show there is other gainful work in the national economy which the claimant could perform." *Carroll*, 705 F.2d at 642.

III. <u>The ALJ's Decision</u>

The ALJ followed the required five-step analysis for evaluating plaintiff's claim. Under step one, the ALJ found that plaintiff has not engaged in substantial gainful activity since January 26, 2017, the amended alleged onset date. (Tr.14) At step two, the ALJ found that plaintiff has the severe impairments of osteoarthritis of the spine, depression, post-traumatic stress disorder, and personality disorder. (*Id.*) At step three, the ALJ determined that plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments. (Tr. 14-15) Before proceeding to step four, the ALJ found that:

> [T]he claimant has the residual functional capacity to perform medium work as defined in 20 C.F.R. 416.967(c) except [the claimant] could have only

6

occasional interaction with co-workers, supervisors, and the general public. The claimant is limited to simple routine tasks.

(Tr. 15-18) Proceeding to step four, the ALJ found that plaintiff had no past relevant work. (Tr. 18) At step five, the ALJ considered plaintiff's age, education, work experience, and RFC, together with the testimony of the VE, and concluded that there are jobs that exist in significant numbers in the national economy that plaintiff can perform, such as cleaner, palletizer, and laundry worker. (Tr. 18-19) The ALJ ultimately concluded that plaintiff has not been under a disability, as defined by the Act, since January 26, 2017, the date his application was filed. (Tr. 19)

IV. *Plaintiff's Challenges*

Plaintiff argues that the RFC is not supported by substantial evidence because the ALJ failed to give significant weight to the opinion evidence in the record. (*See* Dkt. No. 15-1 (Plaintiff's Memo. of Law)) The Court rejects this argument.

The only opinion evidence in the record as to plaintiff's mental limitations or impairments was offered by state agency consultant H. Ferrin, Ph.D.[6] (Tr. 71-80) On May 23, 2017, Dr. Ferrin completed a mental residual functional capacity assessment based on a review of plaintiff's medical records. (*Id.*) He found that plaintiff has some moderate limitations in his ability to perform sustained work activities. (*Id.*) Specifically, Dr. Ferrin concluded that plaintiff is moderately limited in his ability to interact appropriately with the general public; moderately limited in his ability to work in coordination or in proximity to others without being distracted by them; and moderately limited in his ability to respond

---

[6] Plaintiff asserts only that the ALJ failed to properly evaluate or consider his mental impairments in formulating the RFC. (Dkt. No. 15-1, pgs. 7-11) Plaintiff does not argue that his physical limitations prevent him from performing medium work. Thus, the instant decision addresses only whether there is substantial evidence to support the ALJ's finding that plaintiff's mental impairments do not prevent him from performing sustained work activity in accordance with the RFC.

7

appropriately to charges in the work place setting. (Tr. 78) Dr. Ferrin also concluded that plaintiff is moderately limited in his "ability to complete a normal workday or workweek without interruption from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods." (*Id.*)

In his decision, the ALJ indicates that he gave "partial weight" to Dr. Ferrin's opinion because it was based on a review of the medical records as opposed to a personal examination of plaintiff. (Tr. 17) Plaintiff contends that this assessment, combined with the ALJ's failure to expressly discuss each limitation found by Dr. Ferrin, demonstrates that the ALJ failed to give significant weight to the only medical opinion in the record which addressed his mental functioning. Plaintiff is incorrect. In fact, the RFC accounts for each of the specific limitations assessed by Dr. Ferrin by including significant mental limitations in the RFC finding. For example, the ALJ's directive that plaintiff is limited to performing simple, routine tasks accommodates Dr. Ferrin's finding that plaintiff is moderately limited in concentration, persistence, and pace as well as in responding to changes in a work setting. *See Johnson v. Berryhill*, 17-CV-00684, 2018 U.S. Dist. LEXIS 161935 (WDNY Sept. 21, 2018) (explaining that an RFC limitation to simple, routine tasks accounted for claimant's "difficulties in maintaining attention, concentration, performing complex tasks, and learning new tasks"); *Boradbent v. Saul*, 3:18-CV-02127, 2019 U.S. Dist. LEXIS 154537 (D. Conn. Sept. 1, 2019) ("Courts have routinely found that a plaintiff with moderate limitations in memory, concentration and pace can perform simple, routine work tasks."); *Ana H. v. Comm'r of Soc. Sec.*, 19-CV-432, 2020 U.S. Dist. LEXIS 219104 (WDNY Nov. 23, 2020) (RFC properly accounted for plaintiff's moderate limitation in responding appropriately to usual work situations and changes in a routine setting by

limiting her to simple, routine and repetitive tasks). Likewise, the ALJ's restriction of plaintiff to only occasional interaction with co-workers, supervisors, and the general public accommodates Dr. Ferrin's finding that plaintiff has moderate limitations in social interactions. *See Jacqueline L. v. Comm'r of Soc. Sec.*, 6:19-CV-06786, 2021 U.S. Dist. LEXIS 13846 (WDNY Jan. 26, 2021) ("ALJ's limitation of plaintiff to occasional interaction with supervisors, coworkers and the general public, as well as low stress work...[was] consistent with the medical evidence in the record and supported by [doctor's] opinion [that] plaintiff would be moderately limited in interaction with others and regulating her emotions, behavior and well-being."); *Gomez v. Comm'r of Soc. Sec'y*, 18-CV-96, 2020 U.S. Dist. LEXIS 49261 (WDNY March 20, 2020) (ALJ suitably translated moderate limitation in ability to interact appropriately with supervisors by limiting plaintiff to occasional interaction with supervisors); *Reilly v. Colvin*, 13-CV-785, 2015 U.S. Dist. LEXIS 148073 (WDNY Nov. 2, 2015) ("[A] limitation to only 'occasional' or 'limited' contact with others has been found sufficient to account for moderate limitations in social functioning[.]"); *Ana H.*, 2020 U.S. Dist. LEXIS 219104 (RFC properly accounted for plaintiff's moderate limitation in her ability to interact with the public, supervisors, and co-workers by limiting her to occasional interactions with these groups).

The Court similarly rejects plaintiff's argument that the ALJ ignored Dr. Ferrin's findings by failing to incorporate, in the RFC, "restrictions that might accommodate an unreasonable number and length of rest periods." (*See* Dkt. No. 15-1 (Plaintiff's Memo. of Law)) On the mental residual functional capacity assessment form, Dr. Ferrin first indicated that plaintiff is moderately limited in his "ability to complete a normal workday or workweek without interruption from psychologically based symptoms and to perform at a

consistent pace without an unreasonable number and length of rest periods." (Tr. 78) The RFC assessment form then prompted Dr. Ferrin to provide an additional narrative explanation of this limitation. (*Id.*) To that end, Dr. Ferrin wrote that plaintiff "is able to understand and remember simple and detailed instructions and work procedures without substantial limitation" and that plaintiff "can maintain adequate attention and concentration to complete work like procedures and can sustain a routine without substantial limitation."[7] (Tr. 79) Dr Ferrin also found that plaintiff was "not significantly limited" in his ability to "perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerance." (Tr. 78) Based on this detailed assessment by Dr. Ferrin, the Court concludes that the restrictions imposed by the RFC, including that plaintiff can perform only simple and routine tasks and engage in only occasional contact with supervisors, co-workers and the public, are sufficient to account for plaintiff's moderate limitations with regard to completing a normal workday or workweek without interruption as well as performing at a consistent pace without an unreasonable number and length of rest periods. *See Fancher v. Comm'r of Soc. Sec.*, 19-CV-158, 2020 U.S. Dist. LEXIS 181347 (WDNY Sept. 30, 2020) ("The ALJ's determination that plaintiff could work at substantial gainful employment levels is consistent with [state agency medical consultant's] opinion that plaintiff would be moderately limited in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length

---

[7] Dr. Ferrin also noted, in the narrative section of the assessment, that "while claimant does exhibit difficulty with socialization, he is able to engage in routine interactions to meet basic work needs" and "although plaintiff has some difficulty coping in stressful circumstances, there is no substantial limitations in the ability to adapt to customary changes in an ordinary work environment." (Tr. 78)

of rest periods."); *Landers v. Colvin*, 14-CV-1090, 2016 U.S. Dist. LEXIS 41117 (WDNY March 29, 2016) ("The determination that plaintiff is limited to simple, repetitive and routine tasks accounts for plaintiff's limitations as to maintaining attention and concentration, performing activities within a schedule and maintaining regular attendance.") Moreover, this finding is consistent with Second Circuit precedent which instructs that moderate limitations in work related functioning do not significantly limit, and thus prevent, a plaintiff from performing unskilled work. *See Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (concluding that the ALJ's determination that plaintiff could perform unskilled work was "well supported[]" because "[n]one of the clinicians who examined her indicated that she had anything more than moderate limitations in work related functioning."); *Saxon v. Colvin*, No. 13-CV-165, 2015 U.S. Dist. LEXIS 83447, 2015 WL 3937206, at *6 (W.D.N.Y. June 26, 2015) ("The ALJ considered the functional limitations suggested by the medical evidence, including plaintiff's moderate limitation in the ability to learn new tasks, perform complex tasks, make appropriate decisions, relate adequately with others, and deal with stress. These limitations [were] incorporated into the RFC, which limits plaintiff to simple routine tasks in a low stress, low contact environment."); *Mayer v. Comm'r of Soc. Sec.*, 18-CV-62, 2019 U.S. Dist. LEXIS 89052 (WDNY May 28, 2019) (collecting cases holding that moderate limitations do not preclude a plaintiff's ability to perform unskilled work).

In sum, while the ALJ may not have discussed every aspect of Dr. Ferrin's opinion, he clearly incorporated Dr. Ferrin's conclusions in the RFC. *See Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983) (An ALJ need not recite every piece of evidence that contributed to the decision, as long as the record permits a reviewing court to glean the

rationale of an ALJ's decision.). Because the RFC accounted for each of the mental limitations assessed by Dr. Ferrin, the ALJ did not err in failing to assign "significant weight" to Dr. Ferrin's opinion.[8]

Plaintiff also argues that the RFC failed to account for the medical evidence in the record. (*See* Dkt. No. 15-1 (Plaintiff's Memo. of Law)) The Court rejects this argument as well.

A claimant's RFC is the most a claimant can do despite his limitations. 20 C.F.R. §404.1545(a)(1). The ALJ must assess the claimant's RFC based on all the relevant medical and other evidence of record, taking into consideration the limiting effects of all the claimant's impairments. *See* SSR 96-8p, 1996 SSR LEXIS 5, at *2. "[T]he determination of the claimant's RFC is reserved to the ALJ, who is not required to accept, or follow, any one medical opinion in toto." *Cepeda v. Comm'r of Soc. Sec.*, 19-CV-4936, 2020 U.S. Dist. LEXIS 220905 (SDNY Nov. 24, 2020); *accord Camille v. Colvin*, 652 F. App'x 25, 29 n.5 (2d Cir. 2016).

As explained in detail above, the ALJ considered the only opinion evidence in the record as to plaintiff's mental functioning, and issued an RFC that specifically accounted for the mental limitations identified by Dr. Ferrin. The ALJ's conclusion that plaintiff has the mental capacity to perform work activities consistent with the RFC is further supported by other evidence in the record, including the medical evidence and plaintiff's representations as to his own abilities. The ALJ specifically identified medical records

---

[8] Plaintiff also argues that the ALJ erred by failing to apply the "regulatory factors" to the evaluation of Dr. Ferrin's opinion. (*See* Dkt. No. 15-1 (Plaintiff's Memo. of Law) Because the RFC accommodated all of the mental limitations assessed by Dr. Ferrin, any argument that the ALJ should have assigned a different weight to Dr. Ferrin's opinion is moot. *See Amberg v. Astrue*, 08-CV-00967, 2010 U.S. Dist. LEXIS 62691 (NDNY May 24, 2010) ("[A]lthough the ALJ's stated reason for discounting the [doctor's] opinion may not have been supported by the record, any error in this regard was harmless because the ALJ's RFC finding is consistent with [the doctor's] opinion.").

from plaintiff's mental health treatment during the relevant time period which show that his thoughts and memories were within defined limits; his concentration was fair; and his fund of knowledge was average. (Tr. 17, 306-07, 319, 323, 327, 338, 370-71, 376, 384) The ALJ recognized that plaintiff's speech pattern and coherency were repeatedly within normal defined limits. (Tr. 17, 370, 375, 379, 747) He noted that plaintiff was found to be cooperative during examinations, and was consistently described as alert and oriented. (Tr. 17, 828, 319, 323, 327, 332, 370, 375, 380, 640, 643, 828) The ALJ further recognized that plaintiff's insight and judgment were regularly assessed as fair. (Tr. 17, 327, 371, 376, 380, 384) In April of 2017, plaintiff presented as less anxious, less overwhelmed, and with subtly improved relatedness. (Tr. 681) The ALJ noted that on July 17, 2017, plaintiff indicated to a treatment provider that he was able to focus and concentrate without issues. (Tr. 17, 642) Plaintiff also stated that he was able to socialize with others, but that he preferred not to because of his distrust of other people. (*Id.*) In a treatment note dated September 11, 2017, plaintiff was found to have intact memory and average intelligence. (Tr. 640) On April 16, 2019, plaintiff demonstrated coherent thought association and contact, a memory within defined limits, and an average fund of knowledge. (Tr. 752) Also on that date, the treatment provider found plaintiff to have good insight and judgment. (*Id.*) Likewise, on April 22, 2019, plaintiff was found to have normal judgment and thought content, as well as normal cognition and memory. (Tr. 791)

In sum, the medical records discussed by the ALJ are both consistent with the moderate limitations assessed by Dr. Ferrin as well as the ALJ's ultimate determination that plaintiff could perform medium work with some additional restrictions to address his mental health impairments. In fact, plaintiff points to no specific evidence in the record

which proves that he has greater limitations than those reflected by the RFC.[9] *See Smith v. Berryhill*, 740 F. App'x 721, 726 (2d Cir. 2018) (Plaintiff "had a duty to prove a more restrictive RFC, and failed to do so."); *Poupore v. Astrue*, 566 F.3d 303, 305-06 (2d Cir. 2009) (the burden is on the plaintiff to show that he is unable to perform the RFC as determined by the ALJ); 20 CFR § 404.1512 (plaintiff has the burden to prove that he is disabled).

Lastly, plaintiff's activities of daily living also support the RFC. Plaintiff reported that he watches television, goes shopping, listens to the radio, prepares simple meals, attends church every Sunday, and visits with his niece and nephew regularly. (Tr. 15-17, 56, 209-211) Plaintiff is able to pay bills, count changes, handle a savings account, and follow written instructions. (Tr. 211, 213) These activities are not inconsistent with the mental demands of simple and routine tasks or limited interactions with others specified in the RFC.

Contrary to plaintiff's argument, the ALJ did not base his assessment of plaintiff's mental RFC on his own lay opinion. He instead considered the record as a whole, including Dr. Ferrin's opinion, the medical evidence, and plaintiff's own testimony and representations as to his abilities. Because the RFC is supported by substantial evidence, there is no basis to vacate the Commissioner's decision or remand for further administrative proceedings.

---

[9] It is noted that plaintiff was scheduled to undergo two consultative examinations by the Social Security Administration but failed to attend either examination. (Tr. 35-36, 258, 266)

## CONCLUSION

For the foregoing reasons, plaintiff's motion for judgment on the pleadings (Dkt. No. 15) is denied and the Commissioner's motion for judgment on the pleadings (Dkt. No. 16) is granted.

The Clerk of the Court shall take all necessary steps to close the case.

**SO ORDERED.**

Dated:     June 7, 2021
             Buffalo, New York

                                      MICHAEL J. ROEMER
                                      United States Magistrate Judge